IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAMON CLARK, #K03716, **Plaintiff,** v. WEXFORD HEALTH SOURCES, DR VIPIN SHAH, DR. DAVID POOR, and JOSH LANE, **Defendants,** | Case No. 21-cv-1695-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Ramon Clark, an inmate of the Illinois Department of Corrections who is currently incarcerated at Robinson Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Clark claims that while housed at Robinson Correctional Center ("Robinson") he has been denied constitutionally adequate medical care for his ongoing chronic cough. Clark seeks monetary damages (compensatory and punitive) and injunctive relief.

The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of a pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Clark alleges the following: In March of 2020, while under the direct care and medical supervision of Wexford and Dr. Shah, he informed the medical staff at Robinson that he had a chronic cough. (Doc. 1. p. 4). A nurse prescribed standard cold medication, which produced no effect after weeks of taking it. (*Id*). Due to the medication not working, he resubmitted for Nurse Sick Call ("NSC") to put "them" on notice. (*Id*). During an NSC appointment on April 14, 2020, Clark was reissued the same medication that had not been working. (*Id*). Over the next month, more NSCs' ended with a nurse issuing him either the same or no medication. (*Id*. at 5).

On June 5, 2020, Dr. Shah evaluated Clark and ordered a chest x-ray. (*Id*). The x-ray was "conducted within weeks time" and did not reveal the cause of the chronic cough. (*Id*). Clark continued to visit NSC and Dr. Shah over the next month as his cough became persistent day and night, causing him lightheadedness, dizziness, low energy, and chest and throat pain. (*Id*). Clark had a CT scan on July 23, 2020, which was negative. (*Id*. at 6).

In August 2020, Dr. Shah relocated, and Dr. Poor took over Clark's direct care and medical supervision. (*Id*.). In October 2020, Clark tested positive for Covid-19, which aggravated the chronic cough. (*Id*.). From October 13 through the 29, Clark's cough persisted every 15-20 minutes, so he submitted six times for NSC only to be informed that Dr. Poor "was not coming to the covid house" or only seeing emergency issues. (*Id*. at 7). Clark then filed multiple grievances only to have them denied. (*Id*.).

On December 9, an ENT evaluated Clark and concluded that he should see a pulmonologist. (*Id*.). Still, Dr. Poor informed Clark "that they don't have nothing to give plaintiff and [defendant] Wexford will not approve off-site referrals." (*Id*. at 8). Finally, on February 25,

2021, Dr. Paul, a pulmonologist, evaluated Clark. (*Id.*). Dr. Paul prescribed the same medication he had previously received. Clark alleges that was because Dr. Poor failed to provide Dr. Paul with Clark's complete medical treatment as an inmate. (*Id.*).

From March through June 2021, Clark saw Dr. Poor ten more times, seeking treatment for the persisting cough. (*Id.*). On June 24, Clark again visited Dr. Paul, who informed Clark that he could not be adequately evaluated due to the lack of receiving blood work results and other previous tests. (*Id.* at 9). So, Dr. Paul prescribed an asthma treatment, a powered pump, unaware that Clark had tested negative for asthma. (*Id.*). Dr. Poor ordered the powered pump and allowed its use for five months, even though he had previously tested Clark for asthma and knew he was negative. (*Id.*). On November 11, Clark again visited with Dr. Paul off-site, who informed Clark that he still had not received the blood work results and that the only test results he had received were over a year old and could not help to evaluate Clark. (*Id.* at 10).

Dr. Paul stated that "he needed to get aggressive with testing because this is something serious" and then ordered an endoscopy. (*Id.*). Clark apparently qualified for work release and was scheduled to be given his work release. However, on December 7, Dr. Poor had to place a medical hold because of the endoscopy, which caused the warden to cancel his work release. (*Id.*). While it is not certain, Clark likely requested for Dr. Poor to lift the medical hold so he could be given his work release. (*Id.*). On December 10, Dr. Poor lifted the medical hold by canceling the endoscopy. (*Id.*). Afterward, on December 13, with his cough persisting, causing breathing problems and discomfort while eating, Clark visited with nurse Stephens who noted the endoscopy test was canceled. (*Id.* at 11). When Clark asked if it had been rescheduled, she said, "no, Medicaid can deal with it now you know it's about saving money." (*Id.*). Once Clark was transferred to work

release, Clark's coverage switched from Wexford to Medicaid, and he was able to pursue medical treatment from different providers. (*Id.*).

Clark has been suffering from an undiagnosed upper respiratory problem since March 2020 and counting. (*Id.*) The cough has been causing lightheadedness, dizziness, low energy, pain in the throat and chest, breathing problems, and discomfort while eating. (*Id.* at ,5,7,11). Throughout this period, Wexford, Dr. Poor, and Dr. Shah did not timely refer Clark to off-site medical evaluations when they knew his condition was beyond their capacity to treat. Furthermore, Wexford and Dr. Poor ignored Dr. Paul's order for an endoscopy test by lifting the medical hold and failing to reschedule the procedure. Due to this and delays throughout this period, Clark was subjected to prolonged and unnecessary chronic pains.

## PRELIMINARY DISMISSAL

Clark lists Josh Lane, the off-site coordinator for the health care unit at Robinson as a defendant but does not assert any viable claims against him in the body of the Complaint. While Clark mentions Lane in the Complaint, there is no claim that Lane directed or knew of and consented to any of the allegations. *Wilson v. Warren County, Ill.*, 830 F.3d 464, 469 (7th Cir. 2016) (Holding defendant is liable for constitutional deprivation only if it occurs at his direction or knowledge plus consent). Therefore, the claims against Lane are dismissed without prejudice.

Clark's claim that the defendants failed to comply with the Lippert Consent Decree is also dismissed without prejudice. To the extent that Clark seeks compliance with the relief awarded or agreed to by settlement in any of these lawsuits, he would need to seek relief through those cases. *Orr v. Shicker*, 953 F.3d 490, 496 (7th Cir. 2020) (consent decree in *Lippert* includes a dispute resolution provision for those that believe defendants are not in substantial compliance).

**DISCUSSION**

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

**Count 1:**  Eighth Amendment deliberate indifference claim against Dr. Shah and Dr. Poor for delaying and failing to provide Clark with adequate care for his chronic cough.

**Count 2:**  Eighth Amendment deliberate indifference claim against Wexford Health for delaying and failing to provide Clark with adequate care for his chronic cough.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Count 1

Claims for deliberate indifference have an objective and a subjective component. To survive preliminary review, Clark must first allege that he suffered from an objectively, sufficiently serious medical condition. *Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). A medical need is serious if it "has been diagnosed by a physician as mandating treatment," or "is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The condition need not be life-threatening, but must "result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (7th Cir. 2007).

Second, Clark must also plead that the defendants actually knew of, but disregarded, a substantial risk to his health. *Id.* at 721. The Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). However, a plaintiff may be able to "establish a departure from minimally competent medical judgment where a prison official persists in a course of treatment known to be ineffective," delays treatment without penological justification, or refuses to follow a specialist's recommendations. *Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016). And "[i]f a prison doctor chooses an easier and less efficacious treatment without exercising a professional judgment, such a decision can also constitute deliberate indifference." *Id*.

At this stage, Clark has sufficiently pleaded a claim of deliberate indifference against Dr. Poor but not Dr. Shah. His chronic cough was treated not only by medical staff at Robinson, but Clark was eventually referred to an outside specialist for treatment. This is sufficient at screening to plead that he suffered from a serious medical condition. Additionally, Clark alleges that Dr. Poor provided him with ineffective treatment and delayed care for his cough resulting in ongoing and prolonged pain. *See Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005). ("a prisoner is not required to show that he was literally ignored"). However, Clark does not sufficiently allege that Dr. Shah provided him with ineffective treatment. During the first 6 months of Clark's cough, while under Dr. Shah's care, Clark was provided with medication, an x-ray, and a CT scan. Accordingly, Count 1 will proceed against Dr. Poor and will be dismissed without prejudice against Dr. Shah.

**Count 2**

For Wexford Health to be liable, Clark must plead that a Wexford Health policy caused the deprivation of his Eighth Amendment right. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Clark claims that he was told that Wexford would not approve off-site referrals resulting in 9 months of suffering without adequate care. (Doc. 1, p. 8). This is sufficient for Count 2 to proceed against Wexford.

### INJUNCTIVE RELIEF

Clark's request for injunctive relief will be dismissed as he is no longer incarcerated at Robinson and currently resides at Crossroads ATC. (*See* Doc. 6) There is no indication that Clark will return to Robinson, and to assume he could eventually return would be speculation. Therefore, his request for injunctive relief for his chronic cough is moot. *Higgason v. Fairly*, 83 F. 3d 807, 811 (7th Cir. 1996).

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Dr. Poor but is **DISMISSED without prejudice** as to Dr. Shah. **COUNT 2** will proceed against Wexford. Because there are no surviving claims against Josh Lane and Dr. Shah, these Defendants are **DISMISSED without prejudice**, and the Clerk of Court is **DIRECTED** to **TERMINATE** them as parties.

Because Clark's claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Dr. Poor and Wexford the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Clark, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the First Amended Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Clark and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Clark is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  June 27, 2022**

                                             *s/ Stephen P. McGlynn*
                                             **STEPHEN P. MCGLYNN**
                                             **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.